## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ISHMAEL ALI SHUKAR BURK,

*Plaintiff,*

v.

MS. FAVALORO, et al.,

*Defendants.*

CIVIL ACTION
NO. 22-84

**PAPPERT, J.**                                                  **May 15, 2023**

### MEMORANDUM

Ishmael Burk, proceeding *pro se*, sued prison officials and medical staff under 42 U.S.C. § 1983, alleging deliberate indifference to his medical needs, specifically, a back injury he claims to have suffered after slipping and falling in the shower. All four defendants move for summary judgment, three of whom assert a defense of failure to satisfy the Prison Litigation Reform Act's exhaustion requirement. (ECF 45, 47.) The Court scheduled oral argument on the motions and notified the parties that it would consider the exhaustion issue in its role as factfinder pursuant to *Paladino v. Newsome*, 885 F.3d 203, 207 (3d Cir. 2018). (ECF 22, 56, 61.) After carefully reviewing the record, considering the parties' submissions, (ECF 45, 47, 50, 51, 52, 53), and holding oral argument, the Court grants Defendants' motions.

I

On August 16, 2021, Burk slipped and fell in the shower at SCI-Chester. (Compl. at ECF p.8, ECF 22.) He claims that prison staff failed to properly treat and accommodate the back injury he sustained when he fell.

1

Burk alleges that immediately after the incident, he approached the correctional officer on duty, Michael Ortiz-Rahi,[1] to request medical attention. According to Burk's Complaint, Ortiz-Rahi declined to summon medical staff, told Burk to go back to his cell, and ignored Burk when he tried to ask for medical treatment using the cell's call button. Ortiz-Rahi, on the other hand, denies that he was even working at SCI-Chester that day.

Burk initially claimed, in a grievance filed August 23, 2021, that he was not seen medically for his injuries following the accident. (Grievance No. 942114, ECF 45-10, at ECF p.10.) But the medical records show, and Burk admitted in his deposition, that he was seen by Dr. Little, the SCI-Chester Medical Director, on August 20, 2021. (ECF 49-3, at ECF p.10–11; Burk Dep. Tr. 52:6–16.) Between August 23, 2021, and June 3, 2022, Burk was seen by a medical provider for his purported back pain on five more occasions.[2]

Physician's Assistant John Nicholson treated him on four of those visits: Nicholson's treatment notes from August 23, 2021, state that Burk reported that he slipped and fell in the shower the week before and that he had a history of "chronic low back pain." (ECF 49-3, at ECF p.7.) Nicholson noted that Burk "ambulates down the hall with a normal reciprocal gait" and "was able to get onto and off of the exam table without restriction;" that Burk had a full range of motion "with report of pain at end points" and "[m]otor strength 5/5 bilaterally in the lower extremities." (*Id.* at ECF p. 7.)

---

[1]    Burk refers to Correctional Officer Michael Ortiz-Rahi as "C.O. Ortiz" in his Complaint and filings. The Court will use Mr. Ortiz-Rahi's full name.

[2]    Burk was also seen three times during that period for complaints of neck pain stemming from an unrelated incident. (ECF 49-3, at ECF p.3–6, 17–19.)

Nicholson ordered x-rays for the following day and prescribed Motrin and Robaxin.  (*Id.* at ECF p.8.)

Nicholson next treated Burk on March 21, 2022.  (*Id.* at ECF p.22–23.)  Again, Nicholson reported that Burk "ambulates up the hall with a normal reciprocal gait" and "showed no restriction getting onto or off of the exam table."  (*Id.* at ECF p.22.) Although he noted tenderness in the lumbar area, he observed that Burk had a full range of motion with pain at end points and 5/5 motor strength.  (*Id.*)  Nicholson referred Burk to physical therapy and prescribed Motrin.  (*Id.* at ECF p.23.)

On May 3, 2022, Burk presented to sick call complaining that his back pain persisted and prevented him from working his assigned job in the kitchen.  (*Id.* at ECF p.15.)  Nicholson's progress notes state that Burk "was made aware he has been evaluated by several providers including physical therapy.  His objective findings are exaggerated.  He was also advised that if he did sustain a strain [or] sprain of his lumbar spine it would have resolved in 4 to six weeks."  (*Id.*)  Nicholson determined that Burk was "eligible for work duty."  (*Id.*)

On June 3, 2022, Nicholson and Little examined Burk together to address Burk's complaint that "when he works he experiences pain in his low back."  (*Id.* at ECF p.12.) The objective findings did not note any irregularities, and the ultimate assessment is noted as "BACK PAIN??"  (*Id.* at ECF p.13.)  Nevertheless, Nicholson and Little ordered continued physical therapy and placed Burk on a medical lay-in—relieving him of his kitchen duty assignment—from June 3–20, 2022.  (*Id.*; Burk Dep. Tr. 32:6–14.)

From August of 2021 through June of 2022, Burk repeatedly asked to be relieved of his work assignment in the kitchen tray room due to his back and neck pain.  He

directed his requests to Kathleen Favaloro, the prison's Corrections Healthcare Administrator; Catherine Novak, the Corrections Employment Vocation Coordinator; and to the prison's medical staff.  Additionally, Burk submitted several informal request slips to Favaloro complaining about canceled medical and physical therapy appointments and challenging the medical staff's treatment decisions.  On January 6, 2022, Burk sued Ortiz-Rahi, Novak, Favaloro, and Nicholson under 42 U.S.C. § 1983, alleging that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  (ECF 22.)  Following discovery, all four defendants moved for summary judgment.

## II

To prevail on a motion for summary judgment, the movant must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There remains a genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  Once the movant has met its burden, the nonmovant may avoid summary judgment by "identify[ing] facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof."  *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015).  A court considering a motion for summary judgment is not permitted to make credibility determinations and must view all facts and make all reasonable inferences in favor of the nonmovant. *Anderson*, 477 U.S. at 255.  But it need not credit "[u]nsupported assertions, conclusory

4

allegations, or mere suspicions." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

III

The Prison Litigation Reform Act requires inmates to exhaust administrative remedies before bringing a claim under § 1983 or any other federal law.  42 U.S.C. § 1997e(a).  Exhaustion is mandatory and applies to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  To properly exhaust administrative remedies, an inmate "must complete the administrative review process in accordance with the applicable procedural rules . . . as a precondition to filing in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  The Pennsylvania Department of Corrections employs a three-step inmate grievance process.  Pennsylvania Department of Corrections, DC-ADM 804, Inmate Grievance System Policy Statement, https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Gr ievances.pdf.  The inmate must submit an initial grievance to the Facility Grievance Coordinator within 15 working days of the event underlying the claim.  *Id.*  The written grievance must provide a statement of facts relevant to the claim, including the identity of individuals directly involved in the claim.  *Id.*  If the initial grievance is denied, the inmate has 15 working days to appeal to the Facility Manager.  *Id.*  At the final level of review, a denial by the Facility Manager may be appealed within 15 working days to the Secretary's Office of Inmate Grievances and Appeals.  *Id.*

"As formulated in this Circuit, the failure-to-exhaust affirmative defense has two distinct stages.  The first inquiry is whether the prison-employee defendants can demonstrate that the inmate failed to exhaust the on-the-books remedies." *West v.*

5

*Emig*, 787 Fed. App'x 812, 814 (3d Cir. 2019) (unpublished).  "If the defendants can make that showing, then at the second stage, the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her."  *Id.*  Exhaustion is an affirmative defense, so the burden at summary judgment is on the defendants, as movants, to "show that [they] ha[ve] produced enough evidence to support the findings of fact necessary to win."  *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 237 (3d Cir. 2007).

If a genuine dispute of material fact remains, however, the Court may act as the fact finder on the exhaustion issue "because exhaustion constitutes a preliminary issue for which no right to a jury trial exists."  *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013).  Before doing so, the Court must provide "some form of notice to the parties and an opportunity to respond."  *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018).  In its April 12, 2022 Order denying Nicholson's Motion to Dismiss, the Court notified the parties that it would consider exhaustion "with respect to any and all claims remaining in this case against any remaining Defendant (not limited to Nicholson) in its role as a fact finder."  (ECF 22 ¶ 3.)  The Court repeated its notice in its March 15, 2023 Order scheduling oral argument and its March 28, 2023 Order rescheduling oral argument, and specifically ordered Burk to "bring any documents or other evidence supporting his deposition testimony (Burk Dep. Tr. 93:1–3) that he filed a grievance against Mr. Ortiz-Rahi and appealed it to the final stage of review."  (ECF 56, 61.)

A

Burk claims that Catherine Novak, the Corrections Employment Vocation Coordinator at SCI-Chester, was deliberately indifferent to his serious medical needs when, despite his complaints about back pain, she required him to work in the kitchen and disciplined him when he refused.  He named Novak in Grievance No. 940753, filed on August 16, 2021.  (Ex. 12, ECF 45-10.)  In support of her exhaustion defense, Novak submitted the Declaration of Madeline A. Quinn, the Facility Grievance Coordinator for SCI-Chester, stating that Burk appealed the initial denial of Grievance No. 940753 to the Facility Manager, but did not appeal the Facility Manager's denial to the final level of review.  (Quinn Decl. ¶¶ 16–21, ECF 45-10.)  Burk admitted at oral argument that he did not appeal this grievance to the final level of review and conceded that judgment should be entered in Novak's favor based on his failure to exhaust administrative remedies.  (Oral Arg. Tr. 19:17–25); *see also Muhammad v. Sec'y Pa. Dep't of Corr.*, 621 Fed. App'x 725, 727 (3d Cir. 2015) (unpublished) (affirming trial court's finding of failure to exhaust where defendant "submitted a grievance officer's affidavit attesting that [inmate] did not appeal" to "the final level of administrative review").

B

Burk also failed to exhaust his administrative remedies with respect to his claim against Correctional Officer Ortiz-Rahi.  In her Declaration, Quinn stated that she reviewed Burk's grievance file and could not find any grievance against Ortiz-Rahi. (Quinn Decl. ¶ 22.)  Burk testified at his deposition that he filed a grievance against Ortiz-Rahi, that he appealed it to the final level of review, and that it was denied at each level.  (Burk Dep. Tr. 92:22–94:2, ECF 45-1.)  But at oral argument, Burk

7

conceded that he has no evidence to show that he filed any grievance against Ortiz-Rahi, let alone that he completed the appeal process.  (Oral Arg. Tr. 13:11–18.)  Based on that fact, Burk agreed judgment should be entered for Ortiz-Rahi.  (*Id.* at 13:20–14:7.)

IV

A

The parties agree that Burk exhausted his administrative remedies with respect to his claim against Kathleen Favaloro, the Corrections Healthcare Administrator at SCI-Chester.  (Oral Arg. Tr. 22:6–13).

In his summary judgment response, Burk offered two arguments against Favaloro, but conceded both at oral argument.  First, he claimed that Favaloro refused to examine him.  (ECF 50 at 6).  "Correctional defendant-administrators who are not themselves physicians cannot 'be considered deliberately indifferen[t] simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.'"  *Hairson v. Miller*, 646 Fed. App'x 184, 187 (3d Cir. 2016) (quoting *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)).  Although Favaloro was "in the room" while medical staff examined him, (Oral Arg. Tr. 23:20–21), Burk admitted that she was not a doctor, nurse, or any other kind of medical provider; her role at SCI-Chester was purely administrative.  (*Id.* at 22:21–23:6, 23:22–24:5.)  As Burk acknowledged, the facts cannot support an inadequate treatment claim against Favaloro.  (*Id.* at 24:3–5.)

Second, Burk argued that Favaloro denied him medical care.  He claimed that on several occasions he was supposed to be scheduled for medical appointments but was

8

either not placed on the sick call list or discovered his name had been crossed out.[3] (ECF 50 at 7; Oral Arg. Tr. 25:1–11.)  To succeed on a denial of care claim, Burk must show that a prison official was deliberately indifferent to his objectively serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  An official is deliberately indifferent if she "knows of and disregards" an inmate's serious medical need; "the official must both be aware of facts from which the inference could be drawn . . . and . . . must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."  *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

The undisputed evidence shows that Favaloro did not disregard Burk's medical need.  In support of his claim, Burk submitted seven request slips he wrote to Favaloro requesting medical treatment.[4]  (ECF 50, Ex. 2, at ECF p. 16–22.)  Favaloro provided a

---

[3]    Burk admits there is no record evidence suggesting Favaloro was the one who crossed out his name.  (Oral Arg. Tr. 34:14–17.)  He also withdrew the argument that Favaloro denied him medical care because he had insufficient funds in his account.  (*Id.* at 36:24–37:4.)

[4]    On February 7, 2022, Burk stated he had been promised rehab for his back but had not been seen yet.  (ECF 50, Ex. 2, at ECF p.19.)  Favaloro responded the following day that there was no physical therapy order in his records and that he should sign up for sick call to be evaluated.  (*Id.*)  Two weeks later, Burk asked to be seen by an outside doctor because the prison medical staff were not taking his injuries seriously.  (*Id.* at ECF p.18.)  The same day, Favaloro wrote back to inform Burk that his attorney could request an outside examination and that he could continue to sign up for sick call in the meantime.  (*Id.*)  On April 14, 2022, Burk complained that he had not been called down for physical therapy or x-rays.  (*Id.* at ECF p.20.)  Favaloro responded on April 18th, advising that no x-rays had been ordered and that Burk would be seen for physical therapy when the therapist returned from vacation.  (*Id.*)  On May 3, 2022, Burk stated that medical staff failed to examine him and declined to give him a light duty assignment, and renewed his request to be seen by an outside doctor.  (*Id.* at ECF p.21.)  Favaloro advised him the following day that he could contact the Superintendent's office to arrange an outside medical visit.  (*Id.*)  On June 9, 2022, Burk notified Favaloro that he had shown up for physical therapy on two days that week, only to discover his name had been crossed off the list.  (*Id.* at ECF p.16.)  The next day, Favaloro wrote that she had spoken to the therapist and set up an appointment for the following Tuesday, and advised Burk to have the correctional officers call her if

prompt response to each request, usually within one day, either addressing the concern and arranging for him to receive treatment or, if the concern was not within her purview, telling Burk what next steps he should take to have it addressed.  For example, she rescheduled Burk's canceled physical therapy session on June 10, 2022—a task that was within her job duties.  (*Id.* at ECF p.16.)  The following week when Burk requested bottom bunk status, she replied that she was not able to make that decision, but that Burk could request an evaluation by medical staff.  (*Id.* at ECF p.17.)  When Burk complained that the prison medical staff was not taking his injuries seriously, Favaloro advised him how to arrange for an outside doctor to examine him.  (*Id.* at ECF p.18.)  At oral argument, Burk admitted that there is no record evidence that "Favaloro didn't do what she told [him] she was going to do" in her request slip responses; nor that she "was lying to" him; nor that she "interfered in [his] medical care by canceling an appointment or refusing to schedule" him; nor that she "intentionally refused to provide [him] care." (Oral Arg. Tr. 33–34, 36.)  Because there is no record evidence showing that Favaloro disregarded Burk's serious medical need, judgment in her favor is appropriate.  (*Id.* at 37:9–12.)

B

Physician's Assistant Nicholson examined Burk's back on several occasions after the shower accident and ordered x-rays, but did not make any objective physical findings of an injury.  Still, Nicholson prescribed pain medication—Motrin and Robaxin—and ordered physical therapy.  (Oral Arg. Tr. 60:7–16.)  Burk argues that

---

there was a problem on the day of the appointment.  (*Id.*)  Finally, on June 15, 2022, Burk requested an order assigning him light duty work and bottom bunk status.  (*Id.* at ECF p.17.)  Favaloro replied the next day that a medical provider had to write those orders and advised Burk to sign up for sick call.  (*Id.*)

Nicholson should have prescribed different medication, granted him bottom bunk status, and placed him on work restriction until his back healed.  (*Id.* at 63:23–64:10.)

Nicholson raises a failure to exhaust defense, arguing that Burk did not name him in any initial grievance that was ultimately appealed to the highest level.  (*Id.* at 37:25–38:15.)  Burk does not dispute this, but argues that he nevertheless satisfied the PLRA's exhaustion requirement by naming Nicholson in his second- and third-level appeals of Grievance No. 942114.  (ECF 49-5 at ECF p.4, 7.)  The Facility Manager engaged with the merits of Burk's complaint against Nicholson in the Appeal Response, rather than rejecting it for failure to raise the issue in the initial grievance.  (*Id.* at ECF p.5; Oral Arg. Tr. 48:4–13.)  In a similar situation, the Third Circuit determined that "the prison's grievance process excused [the] procedural default" by reaching the merits, and that the "purpose" of the exhaustion requirement—"to put the prison officials on notice of the persons claimed to be guilty of wrongdoing"—was satisfied.  *Spruill*, 372 F.3d at 234.  The Court cannot conclude that Burk failed to exhaust his administrative remedies with respect to Nicholson.

Nicholson is nonetheless entitled to summary judgment on the merits.  Like a claim for denial of medical care, a claim for inadequate medical care requires an objective showing that the plaintiff had a serious medical need and a subjective showing of deliberate indifference by prison staff.  *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 525 (3d Cir. 2017).  The "critical distinction" between denial and inadequacy claims is that "when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violated professional standards of care."  *Id.*  Thus, the deliberate indifference prong of an inadequate care claim

requires both an objective showing that the treatment provided fell below the professional standard of care and a subjective showing that the provider had the requisite state of mind.  *Id.* at 536.  A plaintiff's "[m]ere disagreement as to the proper medical treatment" does not "support a claim of an [E]ighth [A]mendment violation." *Monmouth Cnty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). Burk conceded at oral argument that his complaint rested only on his disagreement with Nicholson's treatment decisions.  (Oral Arg. Tr. at 62.)

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.